[Cite as *State v. Hendrix*, 2021-Ohio-3470.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-190701 |
| | | C-190702 |
| Plaintiff-Appellee, | : | TRIAL NO. B-1400317 |
| vs. | : | *O P I N I O N.* |
| D'JANGO HENDRIX, | : | |
| Defendant-Appellant. | : | |


Criminal Appeals From:  Hamilton County Court of Common Pleas

Judgments Appealed From Are:  Affirmed in C-190701;
                               Appeal Dismissed in C-190702

Date of Judgment Entry on Appeal:  October 1, 2021


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*D'Jango Hendrix*, pro se.

**ZAYAS, Presiding Judge.**

{¶1} Defendant-appellant D'Jango Hendrix appeals the Hamilton County Common Pleas Court's judgments dismissing his "Motion for Postconviction Relief R.C. 2953.21-.23 [and] Motion for Relief of Judgment Pursuant to Civ.R. 60(B)" and his "Motion to Make the State's Physical Evidence Available for Inspection and Testing." We affirm the dismissal of his postconviction petition. And we dismiss for lack of jurisdiction his appeal from the dismissal of his "Motion to Make the State's Physical Evidence Available for Inspection and Testing."

*Procedural Posture*

{¶2} In 2015, for his role in a shoot-out following a neighborhood gathering, Hendrix was convicted upon jury verdicts finding him guilty on four counts of attempted murder and a single count of having weapons while under a disability. He unsuccessfully challenged his convictions on direct appeal and in a petition under R.C. 2953.21 for postconviction relief. *See State v. Hendrix*, 1st Dist. Hamilton Nos. C-150194 and C-150200, 2016-Ohio-2697, *appeals not accepted*, 146 Ohio St.3d 1504, 2016-Ohio-5792, 58 N.E.3d 1175; *State v. Hendrix*, 1st Dist. Hamilton No. C-160887, 2018-Ohio-3754, *appeal not accepted*, 156 Ohio St.3d 1407, 2019-Ohio-2261, 123 N.E.3d 1036.

{¶3} In 2019, Hendrix filed a single document titled "Motion for Postconviction Relief R.C. 2953.21-.23 [and] Motion for Relief of Judgment Pursuant to Civ.R. 60(B)." In that motion, Hendrix sought relief from his convictions under the postconviction statutes, R.C. 2953.21 et seq., or in the alternative, Civ.R. 60(B). The common pleas court reviewed the motion under the postconviction statutes and dismissed the motion for lack of jurisdiction. Three days later, Hendrix filed a "Motion to Make the State's Physical Evidence Available for Inspection and Testing." The common pleas court dismissed that motion as moot. These appeals followed.

*C-190701—Motion for Postconviction Relief*

{¶4} In the case numbered C-190701, Hendrix appeals the dismissal of his motion for postconviction relief under the postconviction statutes or, alternatively, Civ.R. 60(B). On appeal, he presents three assignments of error that may fairly be read together to challenge the dismissal of that motion without an evidentiary hearing. We find no merit to this challenge.

{¶5} *The motion for postconviction relief.* In his support of his motion for postconviction relief, Hendrix alleged that the state had failed to disclose in discovery transcripts of police interviews, and that the state had knowingly elicited, and failed to correct, false and misleading testimony concerning the number of shooters and the types of guns fired. He alleged that his trial counsel's failure to investigate and call exculpatory witnesses denied him his constitutional right to compulsory process. And he alleged that his trial counsel had been ineffective in investigating and presenting his defense. Specifically, he asserted that trial counsel should have secured and used medical records, testimony by his treating physician, and opinion testimony by a medical and forensic-pathology expert to support his claim that he had been shot at an upward trajectory and not, as the state's theory went, with a .45-caliber hollow-point bullet. He asserted that counsel should have investigated and used the victims' statements to police to impeach those witnesses, to show that multiple people had shot at Hendrix, and to show that the victims had coordinated their trial testimony to paint Hendrix as the aggressor. And he asserted that counsel should have investigated and presented medical testimony and records to counter the state's theory of the case, to impeach witnesses, and to support his claim of self-defense.

{¶6} Hendrix also argued that he had been unavoidably prevented from discovering the facts on which his postconviction claims depended. He acknowledged that he had, before his trial, signed a medical-release form. But he

3

asserted that he did not know that his trial counsel had received his medical file, or that the file contained evidence demonstrating his upward-trajectory claim, until appellate counsel provided him with his case file in the spring of 2018, that file was printed out in September 2018, and his medical forensic-pathology expert provided an analysis of the matters contained in the file in July 2019.

{¶7} Hendrix supported his postconviction claims with evidence outside the trial record. He provided his medical records, along with documentation of medical-records requests that defense counsel had made before trial and he had made in 2017. He provided affidavits made in July 2019 by his trial counsel and a medical and forensic-pathology expert. He did not, however, provide his own affidavit in support of his unavoidable-prevention or postconviction claims.

{¶8} The medicine and forensic-pathology expert, in his affidavit, offered his opinion that Hendrix's medical records disclosed "no evidence that [he had been] shot with a hollow-point bullet" or "a large-caliber projectile," but instead showed a gunshot wound that was "completely consistent with a metal-jacketed 9mm projectile wound." The expert also proposed to offer an opinion "[o]n the issue of self-defense," after he "receiv[ed] the necessary records."

{¶9} In his affidavit, counsel retained by Hendrix to represent him at trial acknowledged deficiencies in his preparation and presentation of Hendrix's defense. Counsel averred that his failure to subpoena additional medical records and to interview Hendrix's treating physician or move for funds to retain a medical expert had "undermined" Hendrix's argument, "crucial to [his] self-defense claim," that there had been "a second shooter." Counsel further asserted that Hendrix's self-defense claim might also have benefited from interviewing neighbors whose bedroom window was five feet from where Hendrix had been standing when he "returned fire," from interviewing the shooting victims concerning Hendrix's claim that Chris White, not Jay Dillon, had shot him, from investigating Donald Raines's

4

statement to police that he did not know whether White or Dillon had shot first, and from learning before trial that Kevin Tye had had a 9 mm handgun.

{¶10} *No relief under Civ.R. 60(B).* We note at the outset that the common pleas court could not have afforded Hendrix postconviction relief under Civ.R. 60(B). Civ.R. 60(B) governs the proceedings upon a motion seeking relief from a judgment entered in a civil action. And Crim.R. 57(B) permits a court in a criminal matter to "look to the rules of civil procedure * * * if no rule of criminal procedure exists."

{¶11} But a rule of criminal procedure does exist for advancing the postconviction claims presented in Hendrix's motion for postconviction relief: Crim.R. 35 governs the proceedings upon a petition under R.C. 2953.21 et seq. for relief from a conviction based on an alleged constitutional violation during the proceedings resulting in that conviction. *See* R.C. 2953.21(A)(1). Therefore, Crim.R. 57(B) did not require the common pleas court to entertain Hendrix's motion under Civ.R. 60(B).

{¶12} *No jurisdiction under R.C. 2953.21 et seq.* Hendrix's motion for postconviction relief represented his second effort at securing relief under the postconviction statutes. And that effort was made well after the time prescribed by R.C. 2953.21(A)(2) had expired for filing a postconviction petition.

{¶13} R.C. 2953.23 closely circumscribes the jurisdiction of a common pleas court to entertain a late or successive postconviction petition. The petition, with its supporting evidentiary material, must show either that the petitioner was unavoidably prevented from discovering the facts upon which the postconviction claim depends, or that that claim is predicated upon a new and retrospectively applicable right recognized by the United States Supreme Court since the time for filing the petition had expired. R.C. 2953.23(A)(1)(a). And the petition must show "by clear and convincing evidence that, but for constitutional error at trial, no

reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted * * *." R.C. 2953.23(A)(1)(b). If the R.C. 2953.23(A)(1) jurisdictional requirements are not met, the petition is subject to dismissal without a hearing. *See* R.C. 2953.21(D) and (F) and 2953.23(A).

{¶14} In his motion, Hendrix claimed that the state had failed to disclose in discovery the victims' statements to police. That claim is belied by defense counsel's use of those statements in cross-examining the victims. *See Hendrix*, 1st Dist. Hamilton Nos. C-150194 and C-150200, 2016-Ohio-2697, at ¶ 7-12.

{¶15} Hendrix also claimed that his trial counsel had been ineffective in failing to investigate and use certain evidence to impeach the credibility of the four attempted-murder victims, who had countered Hendrix's self-defense claim with testimony that he had fired on them first. But this court, in the direct appeal, essentially concluded that the jury had not lost its way in finding that Hendrix, by firing first, had been at fault in creating the situation that led to the exchange of gunfire. *Id.* at ¶ 45-46. And the evidence offered in support of that claim cannot be said to so undermine the credibility of those witnesses that its use at trial would have compelled contrary verdicts.

{¶16} Thus, Hendrix, with his motion for postconviction relief, did not satisfy R.C. 2953.23's jurisdictional requirement that he demonstrate by clear and convincing evidence that, but for the alleged constitutional violations, "no reasonable factfinder would have found [him] guilty of the offense[s] of which [he] was convicted." *See* R.C. 2953.23(A)(1). Because the postconviction statutes did not confer upon the common pleas court jurisdiction to entertain Hendrix's motion for postconviction relief, the common pleas court properly dismissed the motion without an evidentiary hearing. Accordingly, we overrule assignments of error one through three.

*C-190702—Motion to Make State's Evidence Available*

{¶17} In the case numbered C-190702, Hendrix appeals the common pleas court's entry dismissing as moot his "Motion to Make the State's Physical Evidence Available for Inspection and Testing." In his fourth assignment of error, he contends that the court erred in denying the relief sought in that motion. We do not reach the merits of the assignment of error, because we have no jurisdiction to review the dismissal of the motion.

{¶18} *No common pleas court jurisdiction.* In his "Motion to Make the State's Physical Evidence Available for Inspection and Testing," Hendrix did not designate a rule or statute under which the relief sought may be granted. This left the common pleas court to "recast" that motion "into whatever category necessary to identify and establish the criteria by which the motion should be judged." *See State v. Schlee*, 117 Ohio St.3d 153, 2008-Ohio-545, 882 N.E.2d 431, ¶ 12 and syllabus.

{¶19} But the motion was not reviewable by the common pleas court under any postconviction procedure provided by statute or rule. The motion was not reviewable under the standards provided by R.C. 2953.21 et seq., governing the proceedings on a petition for postconviction relief, because it did not seek relief from Hendrix's criminal convictions based on a constitutional violation during the proceedings resulting in those convictions. *See* R.C. 2953.21(A)(1). Nor was the motion reviewable as a motion to withdraw a guilty or no-contest plea under Crim.R. 32.1 or a motion for a new trial under Crim.R. 33, when Hendrix was convicted, not upon guilty or no-contest pleas, but following a trial, and the motion did not seek a new trial. The motion was not reviewable under R.C. Chapter 2731 as a petition for a writ of mandamus, under R.C. Chapter 2721 as a declaratory judgment action, or under R.C. Chapter 2725 as a petition for a writ of habeas corpus, because the motion did not satisfy those statutes' procedural requirements. *See* R.C. 2731.04, 2721.12(A), and 2725.04. And Crim.R. 57(B) did not require the common pleas court

7

to entertain the motion under Civ.R. 60(B), because Hendrix's convictions were reviewable, and in fact, had been reviewed, under the procedures provided for a direct appeal.

{¶20} *No court of appeals jurisdiction.* Moreover, under Article IV, Section 3(B)(2), of the Ohio Constitution, an intermediate appellate court has only "such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district." No law confers upon this court jurisdiction to review the common pleas court's entry overruling Hendrix's "Motion to Make the State's Physical Evidence Available for Inspection and Testing."

{¶21} Under R.C. 2953.02 and 2953.08, this court has jurisdiction to review a judgment of conviction entered in a criminal case. But the entry overruling Hendrix's "Motion to Make the State's Physical Evidence Available for Inspection and Testing" is plainly not a judgment of conviction.

{¶22} This court also has jurisdiction under R.C. 2953.23(B) to review an order denying a petition for postconviction relief. But, as we determined, the motion was not reviewable by the common pleas court under the postconviction statutes.

{¶23} Finally, an appeals court has jurisdiction under R.C. 2505.03(A) to review and affirm, modify, or reverse a "final order, judgment or decree." For purposes of R.C. 2505.03's grant of jurisdiction an order is "final" if it "affects a substantial right in an action [and] in effect determines the action and prevents a judgment." R.C. 2505.02(B)(1). An order is also "final" if it is "made in a special proceeding," that is, in "an action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity." R.C. 2505.02(B)(2) and (A)(2). And an order is "final" if it "grants or denies a provisional remedy." A "provisional remedy" is a remedy in "a proceeding ancillary to an action." And an order granting or denying a provisional remedy is final, when the order "in

effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy," and "[t]he appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action." R.C. 2505.02(A)(3) and (B)(4).

{¶24} Thus, under R.C. 2505.03(A), an intermediate appellate court has jurisdiction to review an inferior court's order only if that order was entered in an "action" or "proceeding." But the common pleas court's entry dismissing Hendrix's "Motion to Make the State's Physical Evidence Available for Inspection and Testing" was not made in any "action" or "proceeding" then properly pending before the common pleas court.

{¶25} The entry dismissing the motion was not entered in the "proceeding" commenced upon Hendrix's July 2019 motion for postconviction relief. The common pleas court terminated that proceeding in October 2019, when it entered a final appealable order dismissing the motion for lack of jurisdiction under R.C. 2953.23. *See* R.C. 2953.23(B) (providing that an order denying the relief sought in a postconviction petition is "a final judgment and may be appealed"). Hendrix filed his "Motion to Make the State's Physical Evidence Available for Inspection and Testing" in November 2019.

{¶26} Nor did the "Motion to Make the State's Physical Evidence Available for Inspection and Testing" commence an "action" or "proceeding" before the common pleas court. As we determined, the motion was subject to dismissal for lack of jurisdiction, because it was not reviewable by the common pleas court under any postconviction procedure provided by statute or rule.

{¶27} Because we lack jurisdiction to review the common pleas court's entry overruling Hendrix's "Motion to Make the State's Physical Evidence Available for Inspection and Testing," the appeal from that entry must be dismissed.

9

*We Affirm*

**{¶28}** The common pleas court properly dismissed for lack of jurisdiction Hendrix's motion for postconviction relief. We, therefore, affirm the judgment appealed in the case numbered C-190701.

**{¶29}** This court has no jurisdiction to review the entry dismissing Hendrix's "Motion to Make the State's Physical Evidence Available for Inspection and Testing." Accordingly, we dismiss the appeal in the case numbered C-190702.

Judgment accordingly.

**MYERS** and **WINKLER, JJ.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.